IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HECTOR FUSSA, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-19-1888 |
| STEPHEN T. MOYER, et al.,[1] | * | |
| Defendants | * | |

## MEMORANDUM OPINION

In response to the above-titled civil rights complaint, Defendants Secretary Stephen T. Moyer, former Commissioner Dayena Corcoran, former Warden Thomas Wolfe, CO Eric Kitchen, and Lieutenant Charlie Campbell filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF 11. Fussa opposes the motion. ECF 13.[2] The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6. For the reasons that follow, the defendants' motion will be granted.

### Background

In his unverified Complaint, plaintiff Hector Fussa alleges that on March 7, 2018, he was working in the kitchen at Brockbridge Correctional Facility ("BCF") cooking meals and wearing his personal tennis shoes when he slipped on grease spilled by other kitchen workers and fell into an oven rack that was left open. ECF 1, pp. 3–4. Fussa's hand was caught in the rack and his finger dislocated. *Id.*, p. 4. Lt. Campbell, Lt. Homes, CO Harris, and Sgt. "Jay" were present. *Id.* Harris and Jay took Fussa to the medical unit, where he was evaluated by a physician who directed that Fussa be taken to a hospital for further treatment. *Id.* As a result of this accident, Fussa states,

---

[1] The Clerk shall amend the docket to reflect the correct names of Defendants.
[2] Fussa's Motion for Judgment by Default (ECF 10) will be denied. The defendants sought and were granted an extension of time to respond to the Complaint. ECF 7 and 8.

his right hand "does not close[] as is supposed to, it is weaker and pain is ever present." *Id*., p. 4. He states that he was denied physical therapy and given only Tylenol for pain. *Id*.

Fussa alleges that he was not issued proper shoes to work in an institutional kitchen, and that despite his numerous requests, he was simply told "there are no boots." ECF 1, p. 4. He states that using the institution's grievance procedure did not work since his complaints were ignored. *Id.* On December 20, 2018, he was issued "proper shoe[s]." *Id*. p. 5.

The record evidence shows that Fussa worked in BCF dietary from August 8, 2017, through May 2, 2018. ECF 11-2, p. 2 (DPSCS Primary Assignment History). According to CO Kitchen, when Fussa began his assignment in dietary, he possessed his own boots, ECF 11-3, ¶ 3 (Kitchen Decl.), which Fussa disputes, ECF 13, pp. 3–4. CO Kitchen further states that on November 8, 2017, Fussa traded in his boots but did not receive a new pair until April 18, 2018, because the institution did not have his size. ECF 11-3, ¶ 3.

The defendants contend that Fussa did not file any administrative remedy procedure ("ARP") complaints while housed at BCF, nor did he file any complaints or grievances with the Inmate Grievance Office ("IGO") regarding the facts alleged. ECF 11-4, ¶ 3 (Decl. of Samiyah Hassan); ECF 11-5, ¶ 3. Fussa has provided (1) an illegible ARP receipt, ECF 13-1, p. 17; (2) a copy of ARP DRCF 0310-18, filed May 26, 2018, complaining of a lack of responses to three ARPs he states he filed while housed at BCF, *id*., p. 21; (3) a copy of ARP DRCF 0469-18, filed August 21, 2018, complaining of lack of adequate footwear, *id*., pp. 19–20; and (4) the "Warden's Response" to ARP DCRF 0469-18, indicating that his ARP was found meritorious in part and that "An order has been placed and you will be advised when received," *id*., p. 18. Notably, "DRCF" refers to Dorsey Run Correctional Facility, Fussa's current place of incarceration, not BCF, the

institution where the injury occurred. Although Fussa states he filed three ARPs while housed at BCF, he does not provide them.

## Discussion

The defendants raise the affirmative defense that Fussa has failed to exhaust his administrative remedies. ECF 11-1, p. 9. Fussa's complaint is subject to dismissal pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e because Fussa has not produced evidence that it has not been properly presented through the administrative remedy procedure. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See id.* at 220. In other words, exhaustion is mandatory, and

a court usually may not excuse an inmate's failure to exhaust. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any Division of Correction official or employee. Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S.") § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b).

Inmates housed at an institution operated by Maryland Department of Public Safety and Correctional Services ("DPSCS") may avail themselves of the administrative grievance process which is designed for "inmate complaint resolution." *See generally* C.S. §§ 10-201 *et seq*.; Code of Maryland Regulations ("COMAR") 12.07.01.01 *et seq*. An ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

If an ARP is denied, the prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5). If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). If the Commissioner fails to respond, the grievant shall file any appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

Here, it appears that Fussa was aware of the ARP process, and has availed himself of it more than once. But there is insufficient evidence that Fussa properly availed himself of either the ARP or the IGO process in this case. Fussa provides legible copies of only two ARPs: one filed in May 2018, and the other in August 2018. Both fall outside the 30-day window to file a

grievance in connection with his accident, which occurred in March 2018. While the May 2018 ARP references three ARPs apparently filed in February and March 2018, *see* ECF 13-1, p. 21, Fussa does not provide copies of those ARPs, nor does he demonstrate that he completed ARP review. Moreover, according to Samiyah Hassan, the Administrative Specialist II of DPSCS, Fussa "has not filed any . . . complaints or grievances with the IGO" regarding the claims alleged in this case. ECF 11-4, ¶¶ 1, 3. As discussed above, the PLRA requires that inmates exhaust all available remedies.[3] Because Fussa failed to do so, his claims will be dismissed without prejudice.[4]

## Conclusion

The defendants' Motion to Dismiss Fussa's Complaint or, in the Alternative, for Summary Judgment will be granted, and Fussa's claims will be dismissed without prejudice. A separate Order follows.

  7/28/20  
Date

           /S/                    
Catherine C. Blake  
United States District Judge

---

[3] While the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 411–12 (2007). Because Fussa did not pursue his claim with the Board, he did not exhaust his administrative remedies. *Id*. at 415. Fussa is advised that compensation provided by the Sundry Claims Board is limited to injuries resulting in a permanent partial or total disability, C.S. §10-304(2) and must be filed at the earlier of 24 months of the date of injury or within 12 months of release from incarceration, *id*. at §10-305(b).

[4] As Fussa has not exhausted administrative remedies, the court need not address the defendants' other arguments.